IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 04-cv-201-EWN-MJW**


RAYMOND ARTHUR PRICE,

      Petitioner,

v.

SUPERINTENDENT REID, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

### RECOMMENDATION ON APPLICATION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254 BY A PERSON IN STATE CUSTODY

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**


This case is before this court pursuant to a General Order of Reference to

United States Magistrate Judge (Including Dispositive Motions) issued by District Judge

Edward W. Nottingham.  (Docket No. 9).

Before the court is the pro se incarcerated petitioner's Application for a Writ of

Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (Docket

No. 3), as amended (Docket No. 6), in which he challenges a judgment of conviction

entered in the District Court of Gunnison County upon a jury verdict finding him guilty of

escape, second degree kidnapping, second degree sexual assault, two counts of

aggravated robbery, and three counts of holding hostages for which he was sentenced

2

to a total term of imprisonment of 160 years[1] in the custody of the Colorado Department

of Corrections.  The Colorado Court of Appeals (hereinafter "CCA") affirmed on

April 20, 1995, in a published opinion, People v. Price, 903 P.2d 1190 (Colo. App.

1995); rehearing was denied on May 18, 1995; and the Colorado Supreme Court

denied the petitioner's Petition for Writ of Certiorari on October 2, 1995.  Subsequently,

the trial court denied the petitioner's pro se motion for post-conviction relief pursuant to

Colo. Crim. P. 35(c) by orders entered on February 5 and March 6, 2002.  On June 26,

2003, the CCA affirmed the denial, and the Colorado Supreme Court denied certiorari

on December 22, 2003.  Petitioner then commenced this action on January 26, 2004.

Petitioner raises the following nine claims for habeas corpus relief:

**(1)** Petitioner was denied due process when the trial court failed to

sustain his challenges to four jurors for cause.  They expressed negative

opinions about the petitioner due to the charges filed, and one of them said she

had hostile feelings toward the petitioner.  There were only 28 prospective

jurors, so petitioner was very limited in the choice of people to obtain a fair jury

and was given one hour to voir dire them, which constitutes bias and prejudice

against petitioner.

**(2)** Petitioner's appellate counsel was ineffective because she did not

raise certain issues on appeal, namely, the right of confrontation, challenges for

---

[1]This sentence is comprised of three consecutive sentences of 48 years on each
of the holding hostages convictions and 16 years on the sexual assault conviction, and
concurrent sentences of 40 years for escape, 40 years for kidnapping, 20 years for
aggravated robbery, and 32 years for aggravated robbery.

cause, prosecutorial misconduct, proportionate sentences, and the issues she did raise, if framed differently, could have gotten petitioner's conviction overturned.  Petitioner was not given a hearing on this issue.

**(3)** The Colorado court system denies poor defendants due process and equal protection because the public defender and alternate counsel do little investigation, contact prior counsel instead of doing independent investigation, do not preserve issues; the court denies hearings to poor pro se defendants to produce and develop evidence; and the Colorado appellate courts "upholds [sic] this farce, with little or no review. . . .  Their answer within their opinions are suspect."  (Docket No. 3 at 6).  More specifically, in his Amended Application (Docket No. 6), petitioner claims that he discovered new evidence

> that points to the (2) 'mental health' 'Drs" Johnson/Herbert,
> lied in court, (cover-up).  But no hearings was allotted to
> show this, NO 'attorney' appointed, investigated, this issue.
> New evidence, show's [sic] one alleged 'victim' was a
> state/U.S. government informat [sic]/the town whore (for
> money).  No 'attorney' investigated.  I explained, this to the
> trial court/Colo. Court of Appeals/Colo. Supreme Court/
> upheld this crap.  The Colo. court system treats the poor
> defendant's [sic] badly, and violates due process/equal
> protection/ and constitutes cruel and unusual punishment. . .
> .

(Docket No. 6 at 6).

**(4)** Petitioner was denied his right of confrontation because the prosecutor used a false military record, which was produced through a defense psychiatrist (Anthony Johnson Herbert), to defeat the petitioner's claim of post-traumatic stress ("PTSD") due to his service in Vietnam.  According to the

petitioner, "[d]uring the hearing, I was <u>NOT</u> able to confront any military person, about this bogus record.  Because one, did <u>Not</u> come to the court, to vouch for this bogus record."  (Docket No. 6 at 7).

**(5)** Colorado's Rape Shield Law is unconstitutional and there was insufficient evidence to support the sexual assault conviction.  According to the petitioner, "[t]he <u>alleged</u> rape victim had <u>motive</u> for <u>concocting</u> a story was not harmless where the only evidence that intercourse occured [sic] without victim's consent was her own testimony and the only evidence linking defendant to the <u>alleged</u> rape was the victim's testimony and where physical evidence was thoroughly consistent with the defendant's theory."  (Docket No. 3 at 7) (emphasis in original).  He claims that new evidence, an expert report which he has not submitted, shows that there was no sexual assault.  (Docket No. 6 at 7).

**(6)** Petitioner raises a Sixth Amendment violation, claiming he did not knowingly and intelligently waive his right to counsel, and, in fact, entered a plea of not guilty by reason of insanity.  He claims to have PTSD from his experience in Vietnam.  He contends that due to the incompetence of the defense attorneys, he had to represent himself.

**(7)** Petitioner's sentence is disproportionate and violates the Eighth Amendment.  He asserts that "160 yrs, is way out of line/moreover, the sentence imposed is grossly disproportionate to the 'allege' [sic] crime committed, and therefore violates the prohibition, also, the separate sentences togather [sic] are disproportionate, and none of these alleged offenses should be considered

5

(grave).  In fact with a hearing I can show must [sic] of these alleged offenses are false even lied about."  (Docket No. 6 at 7).

**(8)** Petitioner was denied due process at his sentencing hearing because he was denied another competency hearing, which was two months after the trial.

**(9)** Petitioner was denied a fair trial by an impartial court after a prospective juror,  Dr. Jones, a retired psychologist, made a prejudicial statement during the sanity trial in front of the jury pool that "[h]ow can a person with a mental disorder, represent himself."  Petitioner's request for a mistrial was denied.

The respondents timely filed an Answer (Docket No. 15), and the petitioner filed a Reply (Docket No. 16).  (Docket No. 16).  Upon order of this court, the Clerk of the District Court of Gunnison County, Colorado, provided to this court the written state court records of Gunnison County Case No. 92CR10, People v. Raymond Price. (Docket No. 20).  The court has carefully and thoroughly reviewed the Application, as amended, the Answer, the Reply, and the state court records.  The court now being fully informed makes the following findings, conclusions of law, and recommendation.

Respondents have provided the following statement of the facts, which was from the People's Answer Brief in the appeal of the 35(c) proceedings:

> The defendant [Price] and Doug Alword escaped from the Fremont Correctional Facility by overpowering a detention guard with a homemade weapon. . . .  Subsequently, the two men came upon T.H., who was sitting in her car, waiting for her place of work to open. . . .  Alword held a gun to T.H.'s head and Price told her scoot over and shut up if she wanted to

6

live.  The victim complied. . . .

The two men drove for hours until they came upon a cabin. . . .
They tied the victim up and rummaged through the cabin, and made
themselves something to eat. . . .  At one point Alword was gone for 3 or 4
hours during which time Price raped T.H. . . .  Later, some people drove
up to the cabin, so they fled. . . .  After holding her hostage for 46 hours,
the two men left her tied up in her car. . . .

Price went into a chiropractor's office and threatened the
receptionist.  After taking her car keys and money, he locked her in an
office and left. . . .  Price was eventually captured . . . .

(Docket No. 15 at 5) (citations to record omitted).

## EXHAUSTION AND PROCEDURAL DEFAULT

Section 2254 of Title 28, U.S.C., provides as follows with regard to exhaustion of

state court remedies:

. . .

(b)(1) An application for a writ of habeas corpus on behalf of a person in
custody pursuant to the judgment of a State court shall not be granted
unless it appears that –

(A) the applicant has exhausted the remedies available in the
courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to
protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits,
notwithstanding the failure of the applicant to exhaust the remedies available
in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or
be estopped from reliance upon the requirement unless the State, through
counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented. . . .

28 U.S.C. § 2254(b), (c).  Exhaustion of available and adequate state court remedies thus is generally a prerequisite to a § 2254 habeas corpus application in federal court, "thereby giving the State the ""opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'"" Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995), Piccard v. Connor, 404 U.S. 270, 275 (1971)).  "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."  Id. at 29 (citations omitted).  "Fair presentation of a prisoner's claim to the state courts means that the substance of the claim must be raised there.  The prisoner's allegations and supporting evidence must offer the state courts a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim."  Patton v. Mullin, 425 F.3d 788, 809 n. 7 (10th Cir. 2005), cert. denied, 126 S. Ct. 2327 (2006).  "[O]rdinarily a state prisoner does not 'fairly present' a federal claim to a state court if that court must read beyond a petition or a brief (or similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin, 541 U.S. at 32. "If the exhaustion doctrine is to prevent 'unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution,' . . . it is not sufficient merely that the federal

habeas applicant has been through the state courts." Picard v. Connor, 404 U.S. at 275-76 (citation omitted).

Generally, when a petitioner fails to exhaust his state court remedies, the federal court should dismiss the petition without prejudice so that those remedies may be pursued. Demarest v. Price, 130 F.3d 922, 939 (10th Cir. 1997). "However, in considering unexhausted claims, federal courts should consider whether, upon dismissal of the claims, the petitioner would then be able to raise them in the state courts. '[I]f the court to which Petitioner must present his claims in order to meet the exhaustion requirement would now find those claims procedurally barred, there is a procedural default for the purposes of federal habeas review.'" Id. (quoting Dulin v. Cook, 957 F.2d 758, 759 (10th Cir. 1992), which cites Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)). In addition, a finding of procedural default may also be found when the federal court has before it an opinion from the state court which "rests on a state law ground that is independent of the federal question and adequate to support the judgment." Rodriguez v. Zavaras, 42 F. Supp.2d 1059, 1078-79 (D. Colo. 1999) (quoting Coleman, 501 U.S. at 729). "The doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Id. at 1079 (quoting Coleman, 501 U.S. at 729-30).

In the instant case, the respondents assert that the petitioner did not exhaust his available state court remedies with respect to Claim 2, part of Claim 3, and Claims 4, 5, 6, and 8. In addition, respondents assert that this court should refuse to address

unexhausted Claims 2, 6, and 8 because those claims would now be barred under

Colorado procedure and would be considered procedurally defaulted.  Furthermore,

respondents contend that Claims 2, 3, 4, and 5 are also subject to a different kind of

procedural default, namely, one based on the state court's refusal to consider the

merits of the claim based on procedural reasons.

A review of the CCA's decision shows that the court in essence found that the

petitioner procedurally defaulted some of his habeas claims.  The court noted the

following arguments: "(1) the evidence was insufficient to support the verdict against

him; (2) the prosecutor improperly used leading questions in examining witnesses; (3)

the prosecution used a defense psychiatrist to obtain false records concerning

defendant; (4) he was denied his right of confrontation when the false records were

admitted as evidence against him; and (5) the statutes governing the public defenders'

office and the office of alternative defense counsel are unconstitutional."  People v.

Price, No. 02CA0423 at 2 (Colo. App. June 26, 2003).  The court found that these

arguments

> contain no specific factual basis in support of his claims.  Defendant's
> conclusory allegations are insufficient to demonstrate that he is entitled to
> relief or to a hearing.  Thus, the trial court properly denied defendant's
> motions as to these contentions.  See People v. Rodriguez, 914 P.2d 230
> (Colo. 1996); People v. Diefenderfer, 784 P.2d 741 (Colo. 1989) (it is the
> appealing party's duty to inform the reviewing court as to specific errors
> relied on and the grounds, supporting facts, and authorities therefor).

People v. Price, No. 02CA0423 at 2-3 (Colo. App. June 26, 2006).  See Colo. App.

Rule 28(b)(4) ("The argument shall contain the contentions of the appellant with

respect to the issues presented, and the reasons therefor, with citations to the

authorities, statutes, and parts of the record relied on.").  Based upon these findings,

this court concludes that the petitioner has procedurally defaulted Claim 4 and the

second part of Claim 5.  See Rodriguez v. Zavaras, 42 F. Supp.2d at 1079 (procedural

default when issues raised in 35(c) motion failed to inform the court both as to the

specific errors relied upon and as to the grounds, supporting facts, and authorities

therefor); Colo. App. Rule 28(b)(4) ("The argument shall contain the contentions of the

appellant with respect to the issues presented, and the reasons therefor, with citations

to the authorities, statutes, and parts of the record relied on.").

     For the sake of clarity, each of petitioner's claims will be addressed separately in

more detail below.

     Claim 1.  Respondents correctly assert that petitioner has exhausted his first

claim.

     Claim 2.  This court agrees that petitioner did not exhaust Claim 2.  In his 35(c)

motion and appeal of the denial thereof, the petitioner raised an issue of ineffective

assistance of appellate counsel.  Nevertheless, in those state proceedings, petitioner

merely claimed that his appellate counsel failed to raise on direct appeal the issues of

(1) whether the trial court was obligated to conduct a competency hearing,

(2) the trial court's conclusion that he knowingly and intelligently waived his right to

counsel, and (3) the expert's opinion was not based upon information or observation of

the type reasonably relied upon by other clinical psychologists with similar experience.

In contrast, in Claim 2 here, petitioner claims that his appellate counsel, on direct

appeal, should have raised additional issues, namely, the denial of the right to

confrontation, denial of his challenges for cause, prosecutorial misconduct, and

disproportionate sentences.  Therefore, petitioner did not make a fair presentation to

the state court of the basis of his claim raised here and thus has not exhausted Claim

2.

Claim 3.  In his direct appeal and in his 35(c) motion, petitioner did not expressly

assert a claim that the Colorado court system denies poor defendants due process and

equal protection.  This claim has thus not been exhausted.

Claim 4.  In his 35(c) motion, petitioner raised a claim that his Sixth and

Fourteenth Amendment rights were violated because "the trial court abused its

discretion, by allowing these fraudulent records into evidence and denying defendant's

constitutional right to confrontation."  As noted above, however, the CCA found that this

"argument[] contain[ed] no specific factual basis in support of his claim[]."  Therefore,

as found above, petitioner procedurally defaulted this claim for habeas relief.

Claim 5.  As correctly noted by the respondents, Claim 5 has two components:

first, an allegation that Colorado's rape shield law violated the petitioner's right to due

process; and second, an allegation that there was insufficient evidence to support the

sexual assault conviction.  Respondents incorrectly assert in the first part of their

Answer that the first component was exhausted because it was presented in the same

form in state court as it is raised here.  Respondents, however, later correctly assert in

their Answer that this claim is unexhausted and has been procedurally defaulted.  This

court has reviewed the state records and finds no reference to the rape shield law in

the petitioner's arguments.  Therefore, this court finds that this claim is unexhausted.

As to the second component of this claim, as noted above, the CCA found that petitioner's insufficient evidence claim was conclusory and that the trial court thus properly denied petitioner's 35(c) motion.  Therefore, as found above, petitioner procedurally defaulted this claim.

Claim 6.  Respondents assert that Claim 6 is unexhausted because when petitioner presented this claim in his direct appeal, he did so based upon a different legal theory.  They correctly note that in the state courts, petitioner asserted that he should have been allowed to revoke his waiver of right to counsel after proceedings had begun, but here he alleges that he could not waive his right to counsel because he was pleading not guilty by reason of insanity.  This court notes, however, that in claim VIIII [sic] of the 35(c) motion, petitioner asserted that he did not knowingly and intelligently waive his right to counsel because he has a diagnosis of PTSD, which is part of his allegations in Claim 6 here.  Nevertheless, the CCA found that petitioner's contention "that he did not knowingly waive his right to counsel [was] raised and resolved on his direct appeal.  Thus, we will not address these issues again.  See People v. Johnson, 638 P.2d 61 (Colo. 1981) (matters that have been fully litigated and resolved in an earlier appeal may not be relitigated in postconviction motion)."  People v. Price, No. 02CA0423 (Colo. App. June 26, 2003).  Therefore, petitioner has procedurally defaulted this claim.

Claim 7.  Respondents correctly assert that this claim has been exhausted inasmuch as the petitioner alleged in his 35(c) proceedings that his sentence was constitutionally disproportionate and constituted cruel and unusual punishment.

13

Claim 8.  Respondents assert that it appears that in his 35(c) proceedings,

petitioner did complain about the trial court's failure to make a competency

determination at sentencing, but he did so only as an alleged violation of state law, §

16-8-111(2), C.R.S.  They contend that to the extent that the petitioner now seeks to

raise this claim as a federal due process violation, it is unexhausted because it is being

presented with a different legal basis than what was asserted in the state courts.  Upon

review of the state court records and the habeas application, as amended, this court

agrees with the respondents' assertions.  This court thus finds that this claim is

unexhausted because the petitioner has not fairly presented this claim to the state

courts.  See Anderson v. Harless, 459 U.S. 4 (1982) (petitioner did not fairly present

claim to state court where he relied solely on state law); Hawkins v. Mullin, 291 F.3d

658, 673-74 (10th Cir. 2002) (same).

Claim 9.  Respondents correctly assert that this claim has been exhausted

because in his 35(c) proceedings, the petitioner raised his argument concerning

statements made by a prospective juror.

As to the petitioner's unexhausted claims, Colorado's procedural rules now bar

him from again appealing claims he has previously raised and from raising new claims

related to the criminal conviction at issue here.  Petitioner pursued a direct appeal of

his convictions through the CCA, and his petition for certiorari was denied by the

Colorado Supreme Court.  He may not file a second direct appeal of his conviction, and

Colorado's successive petition rule prevents him from raising new issues in a second

Rule 35(c) motion.  See People v. Hubbard, 519 P.2d 945, 948-49 (1974) (successive

14

application rule).  Furthermore, the period of limitations for a Rule 35(c) motion has

expired.  See § 16-5-402(1), C.R.S. (period of limitations for Rule 35(c) motions).

Petitioner could overcome the procedural default if he could demonstrate either

(1) cause for the default and actual prejudice as a result of the alleged violation of

federal law, or (2) that not reaching his claims would result in a fundamental

miscarriage of justice.  Klein v. Neal, 45 F.3d 1395, 1400 (10th Cir. 1995).  To fit within

the narrow exception of suffering a fundamental miscarriage of justice, the petitioner

must "supplement[] his constitutional claim with a colorable showing of factual

innocence."  Id.  "To be credible, such a claim requires petitioner to support his

allegations of constitutional error with new reliable evidence- whether it be exculpatory

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that

was not presented at trial."  Schlup v. Delo, 513 U.S. 298, 324 (1995).  "[A] substantial

claim that constitutional error has caused the conviction of an innocent person is

extremely rare."  Id.  In this case, the petitioner has not demonstrated cause for and

prejudice from the default or that not reaching his claims would result in a fundamental

miscarriage of justice.

In sum, petitioner has not exhausted Claims 2, 3, 6, and 8, and the first half of

Claim 5 (rape shield law) and has procedurally defaulted not only those claims, but also

Claim 4 and the second half of Claim 5 (insufficient evidence claim).  Therefore, the

merits of those claims have not been discussed below,[2] and the only claims addressed

---

[2]Even if this court were to address the merits of these unexhausted/procedurally
defaulted claims, the court would find no merit to the claims substantially for the
reasons stated in the respondents' Answer.

below on the merits are Claims 1, 7, and 9.

## MERITS OF CLAIMS 1, 7, and 9

"The Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"]

modified a federal habeas court's role in reviewing state prisoner applications in

order to prevent federal habeas 'retrials' and to ensure that state-court convictions

are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693

(2002).  "Under AEDPA, 'federal habeas review of state convictions is limited when

the state courts have adjudicated a claim on the merits.'" Parker v. Scott, 394 F.3d

1302, 1308 (10th Cir. 2005).

More specifically, 28 U.S.C. § 2254 now provides in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e) (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d), (e)(1).  With regard to § 2254(d)(1), the U.S. Supreme Court

has stated that

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses
> have independent meaning. . . .  A federal habeas court may issue the
> writ under the "contrary to" clause if the state court applies a rule
> different from the governing law set forth in our cases, or if it decides a
> case differently than we have done on a set of materially
> indistinguishable facts. . . .  The court may grant relief under the
> "unreasonable application" clause if the state court correctly identifies
> the governing legal principle from our decisions but unreasonably
> applies it to the facts of the particular case. . . .  The focus of the latter
> inquiry is on whether the state court's application of clearly established
> federal law is objectively unreasonable, and we stressed in *Williams* [*v.
> Taylor*, 529 U.S. 362, 409-10 (2000),] that an unreasonable application
> is different from an incorrect one. . . . See also *id.*, at 411 . . . (a federal
> habeas court may not issue a writ under the unreasonable application
> clause "simply because that court concludes in its independent
> judgment that the relevant state-court decision applied clearly
> established federal law erroneously or incorrectly").

Bell v. Cone, 535 U.S. at 694.

"Avoiding these pitfalls does not require citation of [Supreme Court] cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002).  "Furthermore, under § 2254(d)(1), the only 'federal law' [the court] consider[s] is 'clearly established federal law as determined by decisions, not dicta, of the Supreme Court.' . . .  Thus, 'an absolute prerequisite for [a habeas petitioner's] claim is that the asserted constitutional right on which it rests derive in clear fashion from Supreme Court precedent.'" Parker v. Scott, 394 F.3d at 1308 (citations omitted).

With the above standards in mind, this court will review the petitioner's Claims 1, 7, and 9.

17

**Claim 1**

In his first claim for habeas relief, the petitioner contends that he was denied due process when the trial court failed to sustain his challenges to four jurors for cause after they expressed negative opinions about the petitioner due to the charges filed, and one of them said she had hostile feelings toward the petitioner.  Petitioner asserts that there were only 28 prospective jurors, so he was very limited in the choice of people to obtain a fair jury and was given one hour to voir dire them, which constitutes bias and prejudice against petitioner.

The CCA found the following with respect to this claim which was raised in the petitioner's 35(c) proceedings:

> Defendant contends that the trial court erred in denying his challenges for cause to four jurors who expressed hostility towards him. We perceive no error in the court's ruling.
>
> A court must sustain a challenge and excuse a potential juror for cause if it finds:
>
>> [t]he existence of a state of mind in the juror evincing enmity or bias toward the defendant or the state; however, no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.
>
> Section 16-10-103(1)(j), C.R.S. 2002; People v. Young, 16 P.3d 821 (Colo. 2001); People v. Mack, 33 P.3d 1211 (Colo. App. 2001).
>
> The trial court's ruling on a challenge for cause is reviewed for abuse of discretion based on the record of voir dire as a whole. Deference is given to the court's assessment of the prospective juror's credibility and ability to serve because the trial court is in a better position

18

to evaluate the juror's statements.  <u>People v. Sherman</u>, 45 P.3d 774
(Colo. App. 2001).

We conclude that the court did not abuse its discretion in denying
defendant's challenges for cause.  The four jurors initially expressed their
concern over the seriousness of the charges.  However, all four also
expressed their belief that they could and would listen to the evidence
presented and follow the instructions of the court.  Thus, the voir dire as a
whole supports the trial court's ruling that the jurors could be fair and
impartial.

<u>People v. Price</u>, No. 02CA0423 at 2-3 (Colo. App. June 26, 2003).

"In essence, the right to jury trial guarantees to the criminally accused a fair trial

by a panel of impartial, 'indifferent' jurors.  The failure to accord an accused a fair

hearing violates even the minimal standards of due process."  <u>Irvin v. Dowd</u>, 366 U.S.

717, 722 (1961).  "Potential jurors, however, are not expected to be totally ignorant of

the facts surrounding a case.  Rather, jurors are sufficiently impartial under

constitutional standards if they can lay aside any preconceived opinions regarding the

outcome of the case and 'render a verdict based on the evidence presented in court.' . .

. Criminal defendants bear the burden of establishing juror partiality."  <u>Goss v. Nelson</u>,

439 F.3d 621, 627 (10th Cir. 2006) (citation omitted).

"A state trial court's finding regarding the impartiality of particular jurors is a

question of fact. . . .  Only when a manifest error occurs can a federal habeas court

overturn a state court's finding regarding jury impartiality as a whole. . . .  Accordingly,

[the] court independently evaluates testimony with respect to bias to decide whether

the state court committed manifest error by holding the jury was sufficiently impartial."

<u>Id.</u> (citing <u>Patton v. Yount</u>, 467 U.S. 1025, 1036, 1037 n.12 (1984)).  State court factual

findings, however, are presumptively correct, and petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Saiz v. Ortiz, 392 F.3d 1166, 1175 (10th Cir. 2004), cert. denied, 545 U.S. 1146 (2005).

Furthermore, "[i]n a petition for habeas, [the court's] inquiry into the conduct of voir dire is limited to whether the trial court's restriction on voir dire rendered the trial fundamentally unfair. . . .  A defendant's right to an impartial jury includes the right to an adequate *voir dire* to identify unqualified jurors. . . .  The trial court, however, retains great latitude in conducting *voir dire* . . . and the Constitution does not require an additional opportunity to make a searching inquiry." Sallahdin v. Gibson, 275 F.3d 1211, 1222-23 (10th Cir. 2002) (citations omitted), cert. denied, 544 U.S. 1052 (2005).

This court has carefully reviewed the transcripts of the entire *voir dire*, see Transcript of July 13, 1992, trial (Vol. 3) at 21-219; Transcript of excerpts of jury *voir dire* on July 13, 1992 (Vol. 6), and finds that the petitioner has not shown that the trial court abused its discretion or denied him the right to a fair trial when it declined to remove the four jurors for cause.  As found by the CCA, the four prospective jurors initially expressed their concern over the seriousness of the charges, but all four also expressed their belief that they could and would listen to the evidence presented and follow the instructions of the court.  Therefore, the state court did not commit manifest error by holding that the *voir dire* as a whole supports the trial court's ruling that the jurors could be fair and impartial.

In addition, this court finds that a review of the trial transcript shows that the

petitioner was given an adequate *voir dire* to identify unqualified jurors.  Plaintiff's claim

in his Application that "only 28 juror's [sic] were called to voir dire.  So I was very limited

to the choice of proper people to obtain an [sic] fair/ jury" is misleading.  The transcript

reflect that at least 100 individuals were summoned for jury duty for petitioner's trial.  At

the start of the jury selection, the trial judge had roughly a third (28 potential jurors)

selected to sit in the box for *voir dire*.  Throughout the jury selection process, a total of

47 people were questioned, with 19 being excused for cause.  <u>See</u> Transcript of July

13, 1992, trial (Vol. 3) at 21-219.  In addition, the record reflects that the petitioner and

the prosecutor had adequate time to conduct *voir dire*.

Based upon the findings above, this court finds that there is no basis for habeas

relief on Claim 1.  This court cannot find that the CCA's decision was contrary to or

involved an unreasonable application of clearly established federal law, or resulted in

an unreasonable determination of the facts presented in the state court proceeding

### Claim 7

In his seventh claim for habeas relief, petitioner contends that his sentence is

disproportionate and violates the Eighth Amendment.  As noted above, he asserts that

"160 yrs, is way out of line/moreover, the sentence imposed is grossly disproportionate

to the "allege" [sic] crime committed, and therefore violates the prohibition, also, the

separate sentences togather [sic] are disproportionate, and none of these alleged

offenses should be considered (grave).  In fact with a hearing I can show must [sic] of

these alleged offenses are false even lied about."  (Docket No. 6 at 7).

When reviewing the trial court's ruling on the petitioner's 35(c) proceeding, the

21

CCA found the following with respect to these allegations:

> Defendant contends that his cumulative 160-year sentence constitutes cruel and unusual punishment.  We reject this contention.

> If a defendant asserts that the sentence imposed is grossly disproportionate to the crime committed and therefore violates the prohibition against cruel and unusual punishments under the Eighth Amendment and Colo. Const. art. II, § 20, a proportionality review is undertaken.  An abbreviated proportionality review, in which only the gravity of the crime and the sentence imposed are considered, is all that is required if the offense is a serious one and the defendant is eligible for parole.  See People v. Strean, ___ P.3d ___ (Colo. App. No. 01CA0685, Dec. 5, 2002).  Great deference is afforded to the General Assembly's authority to establish the punishments for crimes.  People v. Mandez, 997 P.2d 1254 (Colo. App. 1999).

> A reviewing court conducting a proportionality review of a defendant's sentence must look separately at each sentence imposed.  Close v. People, 48 P.3d 528 (Colo. 2002) (citing United States v. Aiello, 864 F.2d 257, 265 (2d Cir. 1988) (Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence)); People v. Cabral, 878 P.2d 1 (Colo. App. 1993).

> Although defendant does not argue that any of the separate sentences are disproportionate, we note that each of the offenses of which defendant was convicted may be considered grave and serious.  See People v. Cisneros, 855 P.2d 822 (Colo. 1993) (grave and serious offense may be determined by the harm caused or threatened to the victim or society and the culpability of the offender); People v. McNeely, 68 P.3d 540 (Colo. App. 2002) (aggravated robbery is a grave and serious offense).  Moreover, each of the sentences imposed is within the statutorily mandated range, and thus, none of the sentences is disproportionate to the offense committed.

> That the court in its discretion ordered the sentences to run consecutively, thus subjecting defendant to a cumulative sentence of 160 years, does not constitute cruel and unusual punishment.  Rather, the lengthy sentence reflects defendant's conduct in committing multiple offenses.  See Hawkins v. Hargett, 200 F.3d 1279 (10th Cir. 1999) (100-year sentence is not grossly disproportionate to the four violent acts defendant committed); United States v. Aiello, supra (rejecting defendant's argument that life sentence without possibility of parole plus

22

> 140 consecutive years was grossly disproportionate); People v. Cabral,
> supra (life sentence imposed upon conviction of three felonies and
> adjudication as habitual criminal is not disproportionate).

People v. Price, No. 02CA0423 at 6-7 (Colo. App. June 26, 2003).

A sentence does not violate the Eighth Amendment unless it is grossly

disproportionate to the crimes.  Hawkins v. Hargett, 200 F.3d 1279, 1282-83 (10th Cir.

1999).  The Supreme Court has made clear in noncapital cases that "successful

challenges to the proportionality of particular sentences have been exceedingly rare."

Rummel v. Estelle, 445 U.S. 263, 272 (1980).  In determining whether there is "gross

disproportionality," the Tenth Circuit has weighed "a varied of factors, including the

seriousness of the crime, the fit between the punishment and the crime, and the

existence of legislative determinations of an appropriate sentence range."  Milburn v.

Hines, 146 Fed. Appx. 269, **2 (10th Cir. Aug. 17, 2005) (citing Hawkins, 200 F.3d at

1284-85).

Here, petitioner's crimes were very serious.  His assertion that none of his

offenses should be considered grave is ludicrous.  In addition, there is a "fit between

[the] punishment and [the] crime."  Hawkins, 200 F.3d at 1284.  Furthermore, as found

by the CCA, each of the sentences imposed is within the statutorily permitted range.

See id. at 1285 (Tenth Circuit is "reluctant to interfere with the legislative determination

of an appropriate sentence range.).  Also, the Supreme Court has found that a life

sentence without parole is not disproportionate to the crime of possession of 672 grams

of cocaine, see Harmelin v. Michigan, 501 U.S. 957 (1991), and that a life sentence

with the possibility of parole is not disproportionate for a three-time non-violent

23

recidivist, see Rummel v. Estelle, 445 U.S. 263 (1980).  In light of the nature of the

petitioner's crimes during his 48-hour spree upon his escape from incarceration, as well

as the Supreme Court's benchmarks, and the legislature's proper rule in setting

sentencing ranges, this court cannot say that the petitioner's sentence here is grossly

disproportionate to the acts he committed.

Petitioner asserts that his combined sentence is disproportionate.  However,

"[t]he Eighth Amendment analysis focuses on the sentence imposed for each specific

crime, not on the cumulative sentence for multiple crimes."  Hawkins v. Hargett, 200

F.3d at 1285 n.5 (citing O'Neil v. Vermont, 144 U.S. 323, 331 (1892) ("If [the defendant]

has subjected himself to a severe penalty, it is simply because he committed a great

many such offences."); United States v. Schell, 692 F.2d 672, 675 (10th Cir. 1982)

(twenty-year sentence consecutive to current ninety-five year sentence not a violation

of the Eighth Amendment)).  Furthermore, "[i]t is clear that the decision to run the

sentences concurrently or consecutively is a matter within the trial court's discretion."

Id. (citation omitted).

Based upon these findings, petitioner's Eighth Amendment claim contained in

Claim 7 should be dismissed.  This court cannot find that the CCA' decision was

contrary to or involved an unreasonable application of clearly established federal law,

or resulted in an unreasonable determination of the facts presented in the state court

proceeding.

**Claim 9**

Petitioner asserts the following in his ninth claim.  He was denied a fair trial by

an impartial court after a prospective juror, Dr. Jones, made a prejudicial statement during *voir dire* in the sanity trial in front of the jury pool that "[h]ow can a person with a mental disorder, represent himself."  Petitioner's request for a mistrial was denied. Petitioner alleged in his 35(c) motion that the trial court abused its discretion by allowing Dr. Jones to make a prejudicial statement.  The CCA did not address this issue.

Respondents assert that constitutional error is not shown by a fairly brief juror remark which is not of a nature that would necessarily prejudice other jurors.  See United States v. Wacker, 72 F.3d 1453, 1467-68 (10th Cir. 1995) (trial judge's assessment concerning whether jurors have been tainted by a prospective juror's remarks is entitled to great weight as the judge is in the best position to judge the effect of improper statement on a jury and the sincerity of the jurors' pledge to abide by the court's instructions); United States v. Garcia-Flores, 246 F.3d 451, 458 (5th Cir. 2001) (trial judge is in the best position to evaluate the reaction of the jury panel to the prospective juror's comments and the affect of his curative instruction).

This court finds that the petitioner has made no showing of prejudice as a result of this one potential juror's brief comment during a lengthy *voir dire*.  The transcript shows that Dr. Jones stated to the court, "Your Honor, I've listened to all of the previous questions that you asked.  And I, too, have a problem with the situation here and the plea of insanity.  It seems to me if Mr. Price does a credible job, that would be a hard conclusion to reach.  And after practicing medicine for 27 years, temporary insanity is a concept that I have extreme difficulty with."  (Transcript of April 13, 1992, proceeding

25

(Vol. 2) at 77, lines 1-8).  The court excused Jones for cause and then spoke to the

remaining prospective jurors, telling them "[f]irst, I want to try and minimize people

expounding about their philosophy about the defense of not guilty by reason of insanity.

And on a specific situation, if we have to get into that, we will.  But this isn't an open

forum for everyone to say what they think or don't think about that concept." (Transcript

at 79, lines 1-8).  The court then read the statutory definition of the applicable test of

insanity.  (Transcript at 79-80).  Based upon the brief remark by Jones and the court's

immediate curative instructions to the remaining prospective jurors, this court finds that

the petitioner has made no showing of manifest error.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Application for a Writ of Habeas Corpus Pursuant to

28 U.S.C. § 2254 by a Person in State Custody (Docket No. 3), as amended (Docket

No. 6), be **DENIED** and **DISMISSED WITH PREJUDICE**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the**

**parties have ten (10) days after service of this recommendation to serve and file**

**written, specific objections to the above recommendation with the District Judge**

**assigned to the case.  The District Judge need not consider frivolous, conclusive,**

**or general objections.  A party's failure to file and serve such written, specific**

**objections waives *de novo* review of the recommendation by the District Judge,**

**Fed. R. Civ. P. 72(b), Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives**

**appellate review of both factual and legal questions.  Makin v. Colorado Dep't of**

**Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411,**

26

**1412-13 (10th Cir. 1996).**


Dated:     February 15, 2007     s/ Michael J. Watanabe
              Denver, Colorado     Michael J. Watanabe
                                    United States Magistrate Judge